1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Jon Christian Cederberg (Bar No. 76034)
2     joncederberg@quinnemanuel.com
      Shahin Rezvani (Bar No. 199614)
3     shahinrezvani@quinnemanuel.com
    865 South Figueroa Street, 10th Floor
4   Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
5   Facsimile:  (213) 443-3100
      Tai-Heng Cheng (*pro hac vice*)
6     taihengcheng@quinnemanuel.com
      Richard Corey Worcester (*pro hac vice*)
7     coreyworcester@quinnemanuel.com
    51 Madison Avenue, 22nd Floor
8   New York, NY  10010
    Telephone:  (212) 849-7000
9   Facsimile:  (212) 849-7100

10  Attorneys for Defendants Amira Nature
    Foods Ltd., Karan A. Chanana, Bruce C.
11  Wacha, Ritesh Suneja and Ashish Poddar

12

13              UNITED STATES DISTRICT COURT

14       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

15

16  ROBERT READ, Individually and on        CASE NO. 2:15-CV-00957-FMO-PJW
    Behalf of All Others Similarly Situated,
17                                            **DEFENDANTS AMIRA NATURE**
              Plaintiff,                      **FOODS LTD., KARAN A.**
18                                            **CHANANA, BRUCE C. WACHA,**
           vs.                                **RITESH SUNEJA, AND ASHISH**
19                                            **PODDAR'S OPPOSITION TO**
    AMIRA NATURE FOODS LTD.,                  **ROBERT READ AND HIROSHI**
20  KARAN A. CHANANA, BRUCE C.                **SUZUKI'S MOTION FOR RELIEF**
    WACHA, RITESH SUNEJA, and                 **FROM THIS COURT'S ORDER ON**
21  ASHISH PODDAR, UBS                        **THE MOTION TO DISMISS**
    SECURITIES LLC, DEUTSCHE                  **UNDER FED. R. CIV. P. 60(B) AND**
22  BANK SECURITIES INC.,                     **LEAVE TO INTERVENE AS LEAD**
    JEFFERIES & COMPANY, INC., and            **PLAINTIFF, SUBSTITUTE LEAD**
23  KEYBANC CAPITAL MARKETS                   **COUNSEL AND AMEND SECOND**
    INC.,                                     **AMENDED COMPLAINT**
24
              Defendants.
25                                            Judge:   Hon. Fernando M. Olguin
                                             Crtrm.: 22 - 5th Floor
26                                            Hearing Date/Time:  Sept. 29, 2016
                                             10:00 a.m.
27

28
    ────────────────────────────────────────────────────────

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 3

ARGUMENT ........................................................................................................... 6

I.     READ AND SUZUKI'S MOTION FOR RELIEF UNDER FRCP 60(B) IS MERITLESS ................................................................................ 6

     A.     Suzuki Lacks Standing to Seek Relief under FRCP 60(b) ................... 6

     B.     Read Offers No Grounds for Relief under FRCP 60(b) ........................ 7

II.    READ AND SUZUKI'S REQUEST TO AMEND THE COMPLAINT SHOULD BE DENIED ................................................................................... 8

III.   SUZUKI'S MOTION TO INTERVENE IS MERITLESS ............................ 10

     A.     Suzuki Has No Right to Intervene Post-Judgment under FRCP 24(a) ........................................................................................ 10

     B.     Suzuki May Not Intervene Permissively Post-Judgment under FRCP 24(b) ....................................................................................... 13

IV.   READ AND SUZUKI ARE NOT REPRESENTATIVE PLAINTIFFS ....... 13

CONCLUSION ...................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

## Cases

*Andrada v. Atherogenics, Inc.*,
 2005 WL 912359 (S.D.N.Y. Apr. 19, 2005) ........................................................ 14

*Applestein v. Medivation Inc.*,
 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010) .................................................... 14

*Assoc. Gen. Contractors of Cal. v. Sec'y of Commerce of U.S. Dep't of Commerce*,
 77 F.R.D. 31 (C.D. Cal. 1977) .................................................................... 11, 13

*Burgess v. Sailors' Union of Pac.*,
 63 F. App'x 337 (9th Cir. 2003) ...................................................................... 8

*Calvert v. Huckins*,
 109 F.3d 636 (9th Cir. 1997) ........................................................................ 11

*In re Cavanaugh*,
 306 F.3d 726 (9th Cir. 2002) ........................................................................ 14

*Citibank Int'l v. Collier-Traino, Inc.*,
 809 F.2d 1438 (9th Cir. 1987) ........................................................................ 6

*In re Corbett*,
 2009 WL 684810 (D. Ariz. Mar. 16, 2009) ........................................................ 6

*Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Cap. Advisors*,
 498 F.3d 920 (9th Cir. 2007) ........................................................... 10, 12, 13, 14

*Harvest v. Castro*,
 531 F.3d 737 (9th Cir. 2006) .......................................................................... 7

*Havensight Cap. LLC v. People's Republic of China*,
 2015 WL 1966890 (C.D. Cal. Apr. 30, 2015) ...................................................... 7

-ii-

Case No. :15-CV-00957-FMO-PJW
AMIRA DEFENDANTS' OPPOSITION TO READ AND SUZUKI'S MOTION FOR RELIEF
UNDER FRCP 60(B) AND FRCP 24

*Johnson Bank v. Greenplex Invests., LLC*,
  2013 WL 6577284 (D. Ariz. Dec. 16, 2013) ....................................................... 11

*Jou v. Kimberly-Clark Corp.*,
  2015 WL 4537533 (N.D. Cal. July 27, 2015) .................................. 6, 11, 12, 16

*Lal v. California*,
  610 F.3d 518 (9th Cir. 2010) ................................................................................ 7

*Lindauer v. Rogers*,
  91 F.3d 1355 (9th Cir. 1996) ................................................................................ 8

*NAACP v. New York*,
  413 U.S. 345 (1973) ................................................................................... 11, 12

*In re NYSE Specialists Sec. Litig.*,
  240 F.R.D. 128 (S.D.N.Y. 2007) ........................................................................ 10

*In re Netflix, Inc. Sec. Litig.*,
  2016 WL 1399371 (9th Cir. Apr. 11, 2016) ................................................... 8, 9

*Orange Cnty. v. Air California*,
  799 F.2d 535 (9th Cir. 1986) ....................................................................... 11, 13

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) .............................................................................. 14

*Pellegrino v. Nesbit*,
  203 F.2d 463 (9th Cir. 1953) .............................................................................. 12

*Puente v. Cnty. of Los Angeles*,
  358 F. App'x 909 (9th Cir. 2009) ......................................................................... 9

*State of Alaska v. Suburban Propane Gas Corp.*,
  123 F.3d 1317 (9th Cir. 1997) ............................................................................ 11

*United States v. Oregon*,
  745 F.2d 550 (9th Cir. 1984) .............................................................................. 11

*United States v. Yonkers Bd. of Ed.*,
  801 F.2d 593 (2d Cir. 1986) .................................................................. 11

*United Airlines, Inc. v. McDonald*,
  432 U.S. 385 (1977) ............................................................................. 11

*United States ex rel. McGough v. Covington Techs. Co.*,
  967 F.2d 1391 (9th Cir. 1992) .............................................................. 12

*United States v. Alpine Land & Reservoir Co.*,
  984 F.2d 1047 (9th Cir. 1993) ................................................................ 7

*Weeks v. Bayer*,
  246 F.3d 1231 (9th Cir. 2001) ................................................................ 9

*Weikel v. Tower Semiconductor Ltd.*,
  183 F.R.D. 377 (D.N.J. 1998) .............................................................. 14

## Statutes and Rules

15 U.S.C. § 78u-4(a)(3)(B) ..................................................................... 1, 14

Fed. R. Civ. P. 15 ......................................................................................... 9

Fed. R. Civ. P. 23 ....................................................................................... 14

Fed. R. Civ. P. 24 .............................................................................. 10, 13

Fed. R. Civ. P. 59 ......................................................................................... 8

Fed. R. Civ. P. 60 .................................................................................... 6, 7

Local Rule 7-18 ............................................................................................ 8

## Miscellaneous

Wright & Miller, § 1806 Securities Class Actions—Special
  Requirements, 7B Fed. Prac. & Proc. Civ. (3d ed.) ............................... 15

Defendants Amira Nature Foods, Ltd. ("Amira"), Karan A. Chanana, Bruce C. Wacha, Ritesh Suneja, and Ashish Poddar (collectively, the "Amira Defendants") respectfully submit this memorandum of law in support of their opposition to the motion of Plaintiff Robert Read and non-party Hiroshi Suzuki (ECF #148) seeking: (1) relief pursuant to Fed. R. Civ. P. ("FRCP") 60(b) from the Court's August 12, 2016 order of dismissal without prejudice; (2) a three-week extension of time from the date the Court rules on this motion to decide whether to file a third amended complaint; (3) intervention as of right pursuant to FRCP 24(a) or, alternatively, permissive intervention pursuant to FRCP 24(b); (4) appointment as co-lead plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); and (5) approval of Read and Suzuki's selection of The Rosen Law Firm, P.A. ("Rosen") and Safirstein Metcalf LLP as new co-lead counsel.

## INTRODUCTION

Read and Suzuki's post-judgment motion seeks relief that is granted only in exceptional circumstances not present here; is procedurally improper in several respects and not ripe in others; and seeks without an articulated basis to displace Steamfitters Local 449 Pension Fund ("Steamfitters"), the plaintiff that the Court determined in May 2015 was best-suited to represent the interests of the proposed class. Read and Suzuki's motion lacks merit and should be denied.

*First*, the motion does not state that Steamfitters will not appeal the Court's dismissal, let alone why Steamfitters is inadequate to represent the interests of the proposed class. Read and Suzuki are silent as to Steamfitters' position with regard to their motion, which will deprive Steamfitters of lead plaintiff status. The motion is thus premature, particularly as to Read, whose attorneys at Rosen withdrew their prior motion to be lead counsel on behalf of a different plaintiff in April 2015.

*Second*, Read does not articulate the exceptional circumstances this Circuit requires to reopen the judgment under FRCP 60(b). In fact, Read does not identify

any basis for reopening the judgment at all, merely parroting the catch-all FRCP 60(b)(6) standard, which is an exacting one. Moreover, Read's request that the Court permit him three weeks *after* the Court rules on this motion to decide whether he will be able to address the severe deficiencies outlined in the Court's July 18, 2016 order dismissing the Second Amended Complaint ("SAC") is already several weeks longer than the two weeks the Court granted Steamfitters. And, while Read now claims that he did not learn until *one day before* the Court's August 4, 2016 deadline that Steamfitters decided not to file a third amended complaint, he provides no explanation for why Rosen (or the attorneys for Suzuki at Safirstein Metcalf, both of whom have been counsel of record in this case since it was filed and who were and, according to the docket still are, *lead counsel for Steamfitters*) chose not to seek any relief whatsoever prior to the August 4 amendment deadline as soon as they learned that Steamfitters did not plan to amend on August 3.

*Third*, Read cannot intervene under FRCP 24 in a case in which he already is a party. Neither FRCP 60(b) nor FRCP 24 gives a party the unfettered right to revive dismissed claims and get a *fourth* bite at the apple (which is what he will get should the Court permit him leave to amend the SAC at this very late date).

*Fourth*, Suzuki sold and purchased only derivative "put options" on Amira stock and does not own a single share of common stock in the Company. He is, therefore, not a proper lead plaintiff for the proposed class. As a non-party, Suzuki also lacks standing under FRCP 60(b) to file a third amended complaint and does not have any basis on which to intervene under Rule 24 to appeal the Court's dismissal order.

For these reasons, as explained more fully below, the motion is baseless and should be denied in all respects.

# BACKGROUND

Plaintiff Read, represented by Rosen, commenced this putative securities fraud class action by filing a complaint on February 10, 2015 (ECF #1), just one day after Prescience Point Research Group, a notorious short-seller, published a report full of false statements accusing Amira, a global producer and seller of Indian specialty rice products, of filing inaccurate financial statements with the U.S. Securities and Exchange Commission and other corporate malfeasance.  On April 13, 2015, Steamfitters—represented by Peter Safirstein and Elizabeth Metcalf at Morgan & Morgan P.C. (who now represent Suzuki)—moved for appointment as lead plaintiff.  (ECF #22; #41-43.)  Steamfitters purchased 14,921 shares of Amira stock and suffered more than $80,800 in losses.  (ECF #23 at 6.)  On May 18, 2015, the Court appointed Steamfitters lead plaintiff and appointed Morgan & Morgan (including Safirstein and Metcalf) lead counsel for the proposed class.  (ECF #54.)

Plaintiffs filed a Consolidated Amended Complaint on June 1, 2015.  (ECF #56.)  The Amira Defendants moved to dismiss on July 1, 2015.  (ECF #65.)  On September 17, 2015, Plaintiffs amended their complaint for a second time.  (ECF #75.)  Thereafter, Defendants moved to dismiss the SAC.  (ECF #96, 100.)

On March 3, 2016, Steamfitters notified the Court that its attorney Domenico Minerva had moved from Morgan & Morgan to the law firm Labaton Sucharow ("Labaton").  (ECF #119.)  One month later, on April 4, 2016, Steamfitters filed a motion to have Labaton replace Morgan & Morgan as lead counsel.  (ECF #120.)  Neither Rosen nor Safirstein and Metcalf (who, according to the docket, still worked at Morgan & Morgan) opposed the Minerva/Labaton motion.  The Court granted the unopposed Labaton motion just four months ago, on April 25, 2016.  (ECF #140.)

According to the motion papers filed by Read and Suzuki on August 26, 2016, also in April 2016, Safirstein and Metcalf formed the law firm Safirstein Metcalf.  (ECF #148-9 at ¶ 1.)  Safirstein and Metcalf did not file a notice of their law firm change until August 15, 2016, however, at which point they described themselves as

"former counsel of record" for Steamfitters and added themselves as counsel for Plaintiff Read.  (ECF #146-147.)  Safirstein and Metcalf have not withdrawn as counsel to Steamfitters and, according to the docket, remain lead counsel on its behalf as well as on behalf of Read, who they do not purport to represent in bringing this motion.

On July 18, 2016, the Court issued a comprehensive 26-page order dismissing the SAC.  (ECF #143.)  The Court explained in detail why Plaintiffs' allegations in their *third* pleading are deficient and fail to state a claim.  Recognizing the "very high pleading standards" applicable to alleged violations of the securities laws, the Court granted Plaintiffs until August 4, 2016, to try to state a claim.  (*Id.* at 24-25.)  The Court advised Plaintiffs to "carefully and thoroughly review and revise the SAC, as this will be plaintiffs' *fourth opportunity to state a claim and the court will not be inclined to grant any further opportunities to amend*."  (*Id.* at 25 (emphasis added).)  The Court also stated, "[i]n preparing their third amended complaint, plaintiffs must explain how the statements in Amira's Prospectus, '13 Form 20F, and '14 Form 20F were false or misleading despite the intervening events that have since transpired[,]" and cautioned that "failure to timely file a Third Amended Complaint may result in this action being dismissed without prejudice for failure to prosecute and/or failure to comply with a court order."  (*Id.* at 25-26.)

According to the attorney declarations in support of the motion filed by Read and Suzuki, between July 18, 2016 and August 3, 2016, Rosen and Safirstein Metcalf purport to have had "numerous discussions" with Steamfitters' counsel at Labaton about the future of this case.  (ECF #148-9 at ¶ 6.)  On August 1, 2016, Labaton, on behalf of Steamfitters, contacted counsel for the Amira Defendants seeking consent to a 30-day extension of time for Steamfitters to file a third amended complaint.  (Ex. 1.)[1]  The next day, the Amira Defendants informed

---

[1]  "Ex." refers to an exhibit to the Declaration of Patrick Doolittle ("Doolittle Decl.") filed concurrently.

Labaton that they would not consent to the request for additional time. (Ex. 2.) Read and Suzuki admit that as of "the afternoon of August 3" (one day before the August 4 deadline to amend), Safirstein and Metcalf learned that Labaton would not file a third amended complaint nor seek an extension of time. (ECF #148-9 at ¶ 6.) None of the Plaintiffs, nor Suzuki, filed a third amended complaint, request for extension, or any other request for relief prior to the August 4, 2016 deadline.

It was not until more than a week later, on August 12, 2016, after the Court dismissed the case without prejudice for failure to prosecute and failure to comply with the Court's orders (ECF #144), that any counsel of record for Plaintiffs took action. Following dismissal and entry of judgment, Rosen and Safirstein Metcalf contacted counsel for the Amira Defendants requesting a meet-and-confer concerning their intent to: (1) move under FRCP 60(b) to set aside the dismissal order; (2) replace Steamfitters and Labaton as lead plaintiff and lead counsel, respectively; and (3) seek a three-week extension to file a third amended complaint or notice of appeal. (Ex. 3.)

The parties met and conferred on August 15, 2016. (Doolittle Decl. ¶ 7.) During the call, Rosen and Safirstein Metcalf confirmed their intent to file a motion on behalf of Plaintiff Bernard Portnoy (not Read) and an unnamed plaintiff not yet in the case (who they would not identify) to become lead plaintiffs and to seek an extension to *either* file a third amended complaint or appeal. (*Id.* ¶¶ 7, 12.) Rosen and Safirstein Metcalf further stated that they did not file anything prior to the August 12 dismissal and entry of judgment because they were waiting to see what Labaton did on August 4. (*Id.* ¶ 11.) Labaton joined the meet-and-confer on behalf of Steamfitters, but stated that it took no position with regard to Rosen and Safirstein Metcalf's proposed motion. (*Id.* ¶ 8.) When asked by counsel for the Amira Defendants whether they had confirmed Steamfitters' position with regard to the proposed motion, Rosen and Safirstein Metcalf would not respond. (*Id.* ¶ 9.) When asked whether, prior to the August 4 amendment deadline, they had inquired

as to Steamfitters' position with regard to amending or noticing an appeal, Rosen and Safirstein Metcalf declined to respond.  (*Id.* ¶ 10.)  And, when asked by counsel for the Amira Defendants what amendments they proposed to make to the SAC to remedy the defects outlined in the Court's July 18 order, Rosen and Safirstein Metcalf refused to substantively respond other than to say words to the effect of "we will not waste yours or your client's time."  (*Id.* ¶ 13.)  Rosen and Safirstein Metcalf still have not identified what amendments they would make to the SAC.  They have simply stated that they will decide three weeks after the Court decides this motion whether they have grounds to amend.

On August 26, Read and Suzuki filed this motion.  (ECF #148.)  Read purchased 700 shares of Amira common stock on October 14, 2014, at a price of $14.82 per share, amounting to approximately $10,000.  (ECF #148-3.)  Suzuki sold 35 put options between February 3 and 6, 2015, at a total cost of $875, and "closed" his position on February 10, 2015 at a loss of $9,025.  (ECF #148-4.)

As of the date of filing of this opposition, Steamfitters remains the lead plaintiff represented by Labaton.  Elizabeth Metcalf and Peter Safirstein have not formally withdrawn as counsel for Steamfitters.  Steamfitters' deadline to appeal the Court's August 12 dismissal order is September 12, 2016.

## ARGUMENT

## I.   READ AND SUZUKI'S MOTION FOR RELIEF UNDER FRCP 60(B) IS MERITLESS

### A.   Suzuki Lacks Standing to Seek Relief under FRCP 60(b)

FRCP 60(b) permits a court to "relieve *a party* or its legal representative from a final judgment, order, or proceeding" (emphasis added).  The Ninth Circuit strictly construes this language and has held that non-parties cannot seek relief under FRCP 60(b) absent "exceptional circumstances."  *Citibank Int'l v. Collier-Traino, Inc.*, 809 F.2d 1438, 1440-41 (9th Cir. 1987); *see Jou v. Kimberly-Clark Corp.*, 2015 WL 4537533, at *4 (N.D. Cal. July 27, 2015); *In re Corbett*, 2009 WL 684810, at *2 (D.

Ariz. Mar. 16, 2009). Suzuki concedes that FRCP 60(b) is "an equitable remedy" for "a party" (ECF #148 at 5). Accordingly, the request for relief under FRCP 60(b) should be denied as to Suzuki who is not a party and has not identified "exceptional circumstances" requiring that he be permitted to reopen the judgment. To the contrary, Read, who is a party, seeks precisely the same relief.

## B.    Read Offers No Grounds for Relief under FRCP 60(b)

FRCP 60(b) relief also should be denied as to Read, who fails to demonstrate extraordinary circumstances. FRCP 60(b) includes five enumerated bases for granting relief from judgment and includes a sixth "catch-all" provision, which provides that the judgment may be for "any other reason that justifies relief." FRCP 60(b)(6). The catch-all provision, on which Read and Suzuki rely (ECF #148 at 5-6), "has been used sparingly as an equitable remedy to prevent manifest injustice" and "is to be utilized *only where extraordinary circumstances prevented a party from taking timely action* to prevent or correct an erroneous judgment." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993) (emphasis added). FRCP 60(b)(6) requires *a party* to "demonstrate both *injury and circumstances beyond his control* that prevented him from proceeding with the action in a proper fashion." *Havensight Cap. LLC v. People's Republic of China*, 2015 WL 1966890, at *1 (C.D. Cal. Apr. 30, 2015) (citing *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2006)) (emphasis added).

Read (the only *party* who brings this motion) does not meet this high standard. The FRCP 60(b)(6) standard indeed is so high that every case cited in the motion except one resulted in a *denial* of relief. The only cited case that went in favor of granting it, *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010), did so because the court found that an attorney's *gross negligence* resulting in dismissal for failure to prosecute before any ruling on the complaint by the court constituted "extraordinary circumstances" justifying relief from judgment. Read does not argue gross negligence on the part of any attorneys. Rather, the motion does not even

state that Steamfitters will not appeal nor argue that its attorneys acted negligently in deciding not to file a third amended complaint.

Read does not argue that extraordinary circumstances exist at all.  The sole ground to reopen the judgment invoked in the motion is that Read and Suzuki "did not become aware of Steamfitters' final decision to neither file for an extension of time nor to file an amended complaint until *a day before the deadline* this Court set for amending the SAC."  (ECF #148 at 7 (emphasis added).)  However, the motion does not explain why neither Read nor Suzuki (whose lawyers have been counsel of record in this case since it started) moved to become lead plaintiff, seek an *ex parte* extension to file a third amended complaint, or moved to intervene either on August 4—a day *after* Steamfitters' decision not to amend was made clear—or at any time between August 4 and August 12—the day the Court dismissed the case.  In any event, Read, who has been part of this case since its inception and is represented by Rosen, was on notice that the Court was ready to dismiss the action for failure to prosecute if Plaintiffs chose not to amend by August 4. Read and Suzuki's decision to sit on their hands while the clock ticked and the Court entered judgment falls far short of meeting the Ninth Circuit's "extraordinary circumstance" standard.[2]

## II.   READ AND SUZUKI'S REQUEST TO AMEND THE COMPLAINT SHOULD BE DENIED

Once judgment has been entered, "'a motion to amend the complaint can only be entertained if the judgment is first reopened under a motion brought under Rule 59 or 60.'"  *In re Netflix, Inc. Sec. Litig.*, 2016 WL 1399371, at *2 (9th Cir. Apr. 11, 2016) (quoting *Lindauer v. Rogers*, 91 F.3d 1355, 1357 (9th Cir. 1996)).  Leave to

---

[2]  While Read and Suzuki recite the standard for reconsideration under Local Rule 7-18 (Mem. at 6), they do not argue that they are entitled to it.  They are not. A 59(e) motion requires the moving party to show (1) newly discovered evidence; (2) clear error; or (3) an intervening change in law.  *Burgess v. Sailors' Union of Pac.*, 63 F. App'x 337, 339 (9th Cir. 2003).  "This showing is a 'high hurdle,'" and "judgment is not properly reopened 'absent highly unusual circumstances.'"  *Id.* Read and Suzuki do not argue any of these points.

1  amend should be granted only "'when justice so requires.'"  *Puente v. Cnty. of Los*
2  *Angeles*, 358 F. App'x 909, 911 (9th Cir. 2009) (citing FRCP 15(a)(2)).  Post-
3  judgment motions to amend, however, are a "forbidden second bite at the apple."
4  *Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001) (citation omitted).

5      In *Netflix*, the district court dismissed the complaint with prejudice and,
6  approximately one month later, the plaintiffs there requested an order altering the
7  judgment for leave to amend.  The Ninth Circuit upheld the district court's denial of
8  the requested relief, holding, "[w]hen, as here, a plaintiff has previously been granted
9  leave to amend and has subsequently failed to add the requisite particularity to its
10  claims, [t]he district court's discretion to deny leave to amend is particularly broad."
11  *In re Netflix*, 2016 WL 1399371, at *2 (quotations and citation omitted).  The Ninth
12  Circuit further held that "[t]he fact that Plaintiffs 'failed to correct these deficiencies'
13  is a "'strong indication that the[y] have no additional facts to plead.'"  *Id.* (citation
14  omitted).  The same reasoning applies here.  Despite being given a clear roadmap for
15  the steps they would need to take to cure the deficiencies in the SAC and granted
16  ample time to amend, Steamfitters decided not to amend and neither Read nor Suzuki
17  has come forth with any indication that they have sufficient grounds to do so.  In fact,
18  they remain equivocal as to whether they will even decide to amend at all.

19      Read and Suzuki's motion for leave to amend also should be denied because,
20  as explained above, there are no grounds to reopen the case under FRCP 60(b).
21  Even if there were, justice does not require giving Read, Suzuki and their attorneys a
22  *fourth* bite at the apple.  Plaintiffs have already filed three complaints.  Read,
23  represented by Rosen, filed the initial complaint, and Suzuki's attorneys, as they
24  boast in these motion papers, were "the principal attorneys involved in the drafting
25  of the First Amended and Second Amended Complaints."  (ECF #148-9 at ¶ 3.)
26  After three attempts, the Court dismissed the SAC, but provided guidance on what
27  plaintiffs needed to do to state a claim and time within which to do so.  Yet not a
28

single plaintiff amended.  Moreover, another five weeks have passed and Read and Suzuki still have not amended, nor even decided whether they will.

Read and Suzuki's claim that they need additional time to "discover new facts" because the "Court did not appoint them as Lead Plaintiff and class representatives" (ECF #148 at 7) is unavailing.  As the Ninth Circuit has made clear, the PSLRA "was not intended to excuse sophisticated parties from being diligent and keeping abreast of developments in the case, especially when the class is not certified."  *Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Cap. Advisors*, 498 F.3d 920, 925 (9th Cir. 2007).  In sum, there is no excuse for Read's or Suzuki's failure to protect their rights prior to entry of the judgment, and they offer no legal basis on which to re-open this case to potentially try to rekindle their deficient claims against the Amira Defendants.  Their request for leave to amend the SAC should be denied and their request for relief under FRCP 60(b) rejected.

## III.  SUZUKI'S MOTION TO INTERVENE IS MERITLESS

### A.  Suzuki Has No Right to Intervene Post-Judgment under FRCP 24(a)[3]

FRCP 24(a) requires a court to permit intervention if:  (1) a federal statute grants an unconditional right to intervene; or (2) the intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  The Ninth Circuit employs a four-part test to determine whether a non-party may intervene as of right:  (1) the applicant's motion must be timely;

---

[3]  To the extent Read is seeking to intervene, such a motion is improper because Read is already a party. *See In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 132 (S.D.N.Y. 2007) (where class-action plaintiff had previously sought but was denied lead plaintiff appointment, plaintiff did not need to seek leave to intervene pursuant to Rule 24 to challenge the adequacy of the appointed lead plaintiff).

(2) the applicant must assert an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be situated such that without intervention the disposition may impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties. *Orange Cnty. v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986).

Post-judgment motions to intervene are "generally disfavored" in the Ninth Circuit because they "create[] 'delay and prejudice to existing parties.'" *Calvert v. Huckins*, 109 F.3d 636, 638 (9th Cir. 1997) (citing *U.S. v. Yonkers Board of Education*, 801 F.2d 593, 596 (2d Cir. 1986); *Assoc. Gen. Contractors of Cal. v. Sec'y of Commerce of U.S. Dep't of Commerce*, 77 F.R.D. 31, 37 (C.D. Cal. 1977) ("motions for intervention at [the post-judgment] stage [] are usually denied"); *Johnson Bank v. Greenplex Invests., LLC*, 2013 WL 6577284, at *3 (D. Ariz. Dec. 16, 2013) ("[i]ntervention after final judgment is typically disfavored"). In addition, it is well-settled that, while rarely granted, post-judgment intervention is permitted solely for purposes of an appeal. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 396 (1977); *State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1320 (9th Cir. 1997); *Jou*, 2015 WL 4537533, at *3.

Suzuki's motion to intervene is untimely. In determining the first prong, timeliness, the Court weighs three factors: (1) the stage of the proceeding; (2) the prejudice to other parties; and (3) the reason for and length of the delay. *Id.* (citing *U.S. v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). "Timeliness is to be determined from all the circumstances" and is within the sound discretion of the trial court. *NAACP v. New York*, 413 U.S. 345, 365-66 (1973). Like the moving party in *NAACP*—whose motion to intervene was filed just four days after judgment was entered and who knew all along that its rights were impacted—Suzuki offers no "unusual circumstances warranting intervention." *Id.* at 368. To the contrary, Suzuki's counsel knew from the inception of the lawsuit, if not at least as of July 18, 2016, that his rights would be impacted should Steamfitters not file a third amended

complaint.  His attorneys (who are still listed on the docket as lead counsel for Steamfitters) in fact were in contact with Labaton between July 18, 2016 and August 3, 2016.  But Suzuki did nothing.  He instead waited for the Court to dismiss the case before taking any action.  As in *NAACP*, post-judgment intervention by Suzuki here is untimely, unwarranted, and should be denied.

In addition, while Suzuki argues that the Ninth Circuit "has found post-judgment interventions permissible when a party with interests similar to the applicant's fails to take further action," thereby suggesting that he may intervene in order to amend (ECF #148 at 11), the cases on which he relies permitted post-judgment interventions *solely* for purposes of bringing an appeal.  *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1393 (9th Cir. 1992); *Pellegrino v. Nesbit*, 203 F.2d 463, 465 (9th Cir. 1953).  Suzuki, who seeks leave to intervene to amend the SAC, cites no authority for obtaining such exceptional relief.

Further, Suzuki's request to intervene for purposes of appealing is untimely because there is no indication that Steamfitters does not intend to appeal and, in fact, his counsel declined to confirm as much during the meet-and-confer.  Under such circumstances, *McGough* and *Pellegrino* are inapposite and the general presumption against post-judgment intervention controls.

Suzuki also fails to meet the other requirements for intervention as of right under 24(a).  As discussed in greater detail in Section IV, as the seller and buyer of put options, Suzuki's interest differs from the other members of the proposed class, who owned common stock.  And Suzuki's ability to protect this interest is not affected by the case's dismissal without prejudice, as Suzuki is free to file his own separate complaint.  *See Employers-Teamsters*, 498 F.3d at 925; *Jou*, 2015 WL 4537533, at *4.  Finally, Suzuki has not established why Steamfitters or Read are not adequately representing his interests.  Even if Steamfitters does not appeal, Read (an existing party who seeks lead plaintiff status) requests the same relief as Suzuki.  Suzuki's motion to intervene under FRCP 24(a) should be denied.

### B.  Suzuki May Not Intervene Permissively Post-Judgment under FRCP 24(b)

Under FRCP 24(b), a court may permit intervention if:  (1) a federal statute grants a conditional right to intervene; (2) the intervenor "has a claim or defense that shares with the main action a common question of law or fact"; and (3) the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights."   A motion for permissive intervention must be timely, *Orange Cnty.*, 799 F.2d at 539, and courts treat the timeliness requirement of FRCP 24(a) with greater leniency than under FRCP 24(b).  *Assoc. Gen. Contractors*, 77 F.R.D. at 34.

Because Suzuki's motion to intervene is untimely under FRCP 24(a), it also fails under 24(b).  Suzuki's position as a put option holder raises unique issues of law or fact that could complicate the proceedings.  Suzuki's intervention would further unduly delay adjudication because he is not prepared to file an amended complaint—or even make a decision about whether to file such an amended complaint—until three weeks after this Court decides this motion.  Suzuki is a sophisticated party whose lawyers were on notice of the procedural posture of this case and the ramifications of delay.  Under such circumstances, he should have intervened sooner or been prepared to file a complaint when the action was dismissed.  *See Employers-Teamsters*, 498 F.3d at 925.  Even if he could as a matter of law amend the SAC at this late date as a non-party (he cannot), Suzuki's motion suggests that he is unprepared to do so and will thus further delay these proceedings, which have been pending since February 2015.  As a result, Suzuki's motion to intervene under FRCP 24(b) should also be denied.

## IV.  READ AND SUZUKI ARE NOT REPRESENTATIVE PLAINTIFFS

Read and Suzuki's motion should be denied on the additional, independent basis that neither is an adequate representative of the proposed class.

As a threshold matter, the standard for seeking appointment as lead plaintiff is not the same as the standard for intervention.  Rather, "a motion for lead plaintiff status carries with it a more onerous burden," namely proving which plaintiff has the highest financial stake in the outcome of the case.  *Employers-Teamsters*, 498 F.3d at 923-24.  The Ninth Circuit held in *Employers-Teamsters* that equating a motion for appointment as lead counsel and a motion for intervention is inappropriate.  Therefore, Read and Suzuki—whose motion to be appointed lead plaintiffs is tied entirely to their arguments in favor of intervention (none of which has merit as set forth in Section III *supra*)—***have provided no grounds on which either may be appointed lead plaintiff.***

In addition, the PSLRA requires that the Court appoint a lead plaintiff "that [it] determines to be most capable of adequately representing the interests of the class members."  15 U.S.C. § 78u–4(a)(3)(B)(i).  In selecting a lead plaintiff under the PSLRA, the Court "must . . . focus its attention on that plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'"  *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002); *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).

Courts in the Ninth Circuit and across the country have repeatedly rejected efforts by plaintiffs who traded exclusively in options to serve as lead plaintiffs. *See, e.g.*, *Applestein v. Medivation Inc.*, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010) ("[T]he nature of [proposed lead plaintiff's] [put] options trading and the information he used to make investment decisions could become the focus of the litigation, distracting from the central issue . . . ."); *Andrada v. Atherogenics, Inc.*, 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005) ("[Movant] has failed to identify a single instance in which an option holder was deemed to be an appropriate lead plaintiff for an entire securities fraud class action."); *Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 392 (D.N.J. 1998) ("[Movant], as the purchaser of . . .

1   [o]ptions, is neither a typical nor an adequate class representative for a class

2   consisting primarily, if not exclusively, of purchasers of . . . [s]hares.").

3        Suzuki unquestionably is not an appropriate lead plaintiff.  As the purchaser

4   of put options and no common stock, Suzuki does not share the same interests as

5   common stock holders and is not a typical or adequate class representative.  Read

6   also is not an appropriate lead plaintiff.  Read never moved to become lead plaintiff

7   at any point prior to bringing this motion.  And, while his attorneys at Rosen did

8   move to be lead counsel in April 2015, they did so on behalf of Plaintiff Portnoy

9   (and subsequently withdrew that motion).  Neither Read nor Suzuki are institutional

10   investors and appear more analogous to the "professional plaintiffs" that the PSLRA

11   is meant to discourage.  *See* Wright & Miller, § 1806 Securities Class Actions—

12   Special Requirements, 7B Fed. Prac. & Proc. Civ. (3d ed.).

13        Finally, Steamfitters has not moved to withdraw as lead plaintiff (nor has

14   Labaton withdrawn as lead counsel for Steamfitters or the proposed class).  To date,

15   no other plaintiff has shown a larger financial interest in the litigation than

16   Steamfitters.  Read and Suzuki's motion suggests that they may be moving to

17   become lead plaintiffs because Steamfitters is no longer fairly and adequately

18   representing the proposed class, though they do not so state anywhere in their

19   motion.  Until Steamfitters' time to appeal has run, it is premature to conclude that

20   Steamfitters is no longer prosecuting the action.  Steamfitters' decision not to file a

21   third amended complaint—which Read and Suzuki are not yet prepared to do,

22   despite the fact that both law firms representing them have been involved in this

23   case since it was filed in February 2015 and, as Safirstein and Metcalf profess, have

24   done "extensive work in investigating and prosecuting this matter" and are "well

25   qualified to resume [their] work on this matter and to continue on with the

26   investigation" (ECF #148-9 at ¶ 7)—hardly meets the "no longer fairly and

27   adequately representing the class" standard where an option for appeal still exists.

28   Regardless, Read and Suzuki's failure to take any action to protect their interests (or

those of the proposed class) prior to the entry of judgment strongly suggests they are inadequate lead plaintiffs.

The Court should, therefore, deny Read and Suzuki's motion to be appointed co-lead plaintiffs and deny their selection of co-lead counsel as well.[4]

## CONCLUSION

For the foregoing reasons, the Amira Defendants respectfully request that the Court deny Read and Suzuki's motion in its entirety and deny all relief sought therein.

DATED:  September 8, 2016

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By_____
Tai-Heng Cheng (*Pro Hac Vice*)

*Attorney for Defendants Amira Nature Foods Ltd., Karan A. Chanana, Bruce C. Wacha, Ritesh Suneja and Ashish Poddar*

---

[4] Read and Suzuki alternatively argue that if their motion to serve as co-lead plaintiffs fails, the Court should "vacate its May 18, 2015 order consolidating these cases (ECF No. 54), and allow them to pursue the claims they first filed in an amended complaint."  (Mem. at 2 n.1.)  This request is baseless and should be denied.  If Read and Suzuki want to pursue their claims, they can file a new complaint.  *See Employers-Teamsters*, 498 F.3d at 925; *Jou*, 2015 WL 4537533, at *4.