

**Safirstein Metcalf LLP**

Peter Safirstein
Tel: (212) 201-2845
psafirstein@safirsteinmetcalf.com

Laurence M. Rosen
Tel: (213) 785-2610
lrosen@rosenlegal.com

December 28, 2016

<u>**VIA ECF**</u>

Honorable Fernando M. Olguin,
United States District Judge
    for the Central District of California
312 North Spring Street
Court Room 22, 5th Floor
Los Angeles, California, 90012

    Re: <u>**Reed vs Amira Nature Foods, Ltd. et al, CV 15-0957 FMO (PJWx)**</u>

Dear Judge Olguin:

We write to bring additional facts to the Court's attention while our Motion of August 26, 2016 for, among other things, leave to intervene as Lead Plaintiffs, is pending.

In Plaintiffs' Memorandum of Points and Authorities in support of the Motion, we state that:

> On July 15, 2016, Indian credit rating company, Credit Analysis & Research Ltd. ("CARE"), issued a report, revising and suspending the ratings it assigned to the bank facilities of Amira, due to delays in debt servicing because of a "stretched liquidity position." CARE told Movants' counsel on August 23, 2016 that Amira was unresponsive to its requests for information it required to monitor the Company's ratings…
> ECF No. 148, pg. 4.

Today, a financial analysis of Amira Nature Foods ("Amira") appeared in the financial publication *Seeking Alpha* (attached).  This analysis sets forth facts showing that Amira is in default of its debt obligations and that Amira has failed to disclose such default in its SEC filings and to investors.  Other information contained in the *Seeking Alpha* report is alarming as well.

We do note that this information is being reported by short sellers, however, that does not mean the information is not true and is of course, cause for concern by investors in Amira.  We, and our clients, are worried about the current state of affairs at Amira and urge Your Honor to schedule a hearing on our pending motion so that we may be heard on the important issues before the Court.

                    Respectfully submitted,

      /s/ Peter Safirstein
Peter Safirstein, Esq.
Elizabeth Metcalf, Esq.
SAFIRSTEIN METCALF LLP
1250 Broadway, 27th Floor
New York, NY 10001
Telephone: (212) 201-2855
Email: psafirstein@safirsteinmetcalf.com
       emetcalf@safirsteinmetcalf.com

Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

[Proposed] Lead Counsel for Plaintiffs

cc: All counsel of record via ECF

Seeking Alpha<sup>α</sup>

# Amira Nature Foods: Does Apparent Debt Default Mean Equity Is A Zero?

Dec. 28, 2016 8:28 AM ET14 comments
by: Liberty Street Research

## Summary

- Amira appears to have defaulted on its bank debt, but has failed to disclose this in its SEC filings.

- Recent disclosures by ANFI appear to indicate that its operations are rapidly deteriorating.

- In light of these developments, we believe that the validity of ANFI's financial statements filed with the SEC should be questioned by investors and regulators.

- Due to the Company's inability to service its debt, we believe that the share price of Amira Nature Foods Ltd. should be $0.00.

**Introduction**

Amira Nature Foods (NYSE:ANFI) needs no formal introduction to readers of Seeking Alpha. Since its IPO in October 2012, ANFI has had its fair share of skeptics. On Seeking Alpha, there have been numerous authors that have questioned ANFI's business operations, financial reporting, and valuation. In fact, ANFI is in the process of suing one of its critics, Prescience Point.

We are not here to agree or disagree with the opinions of ANFI's past critics, other than to state that we wholeheartedly agree with those that have concluded that ANFI shares are worth $0.

Based on publicly disclosed facts sourced from ANFI's own filings and from independent third parties, it is clear to us, as discussed below, that ANFI has failed to adequately disclose material information to U.S. investors and, in our opinion, the validity of its SEC financials should be questioned by investors and regulators.

**Failure to Disclose a Debt Default**

ANFI has a complex organizational structure. All of its operating subsidiaries consolidate into Amira Pure Foods Private Limited ("Amira India"), its operating subsidiary in India, which is controlled by a non-operating subsidiary incorporated in Mauritius, which is wholly-owned by the publicly traded holding company, Amira Nature Foods Ltd., which is incorporated in the British Virgin Islands.

As ANFI states in its most recent annual report, "We are a holding company and are dependent on dividends and other distributions from our subsidiaries, particularly, Amira India". **It's important to recognize that all revenues are generated by the operating subsidiary, Amira India, and its wholly-owned subsidiaries.**

Additionally, ANFI's secured debt is incurred by the Indian operating subsidiary. Per ANFI's FY2016 20-F, the Company's "outstanding secured revolving credit facilities and term loans have been secured by, among other things, certain current and fixed assets of Amira India".



Source: ANFI FY2016 20-F

In July 2016, CARE Ratings, an India-based credit rating agency, issued a report (archived copy here) on the bank facilities of Amira India, the Indian operating subsidiary of ANFI. In its report, CARE stated:

> *"CARE has revised the ratings assigned to the bank facilities of Amira Pure Foods Pvt. Ltd. (Amira India) to 'CARE D/CARE D' on account of the **delays in debt servicing due to stretched liquidity position.** CARE has also suspended, with immediate effect, the ratings, as the company has not furnished the information required by CARE for monitoring of the rating(s)."*

**Rating Rationale**

CARE has revised the ratings assigned to the bank facilities of Amira Pure Foods Pvt Ltd (Amira India) to 'CARE D / CARE D' on account of the delays in debt servicing due to stretched liquidity position. CARE has also suspended, with immediate effect, the ratings, as the company has not furnished the information required by CARE for monitoring of the rating(s).

Source: CARE Ratings Report, 7/15/2016

According to the definitions on the CARE Ratings website, debt instruments with a rating of "CARE D" are "in default or are expected to be in default soon."

> CARE D | Instruments with this rating are in default or are expected to be in default soon

*Source: CARE Ratings*

In August 2016, ICRA, an India-based credit rating agency in which Moody's owns a controlling stake, issued a report (archived copy here) on the bank facilities of Amira India. In its report, ICRA stated:

> *"ICRA has downgraded its [ICRA]BBB (pronounced as ICRA triple B) rating with Stable outlook and [ICRA]A3+ (pronounced as ICRA A three plus) rating for Rs. 1,820.00 crore bank limits of Amira Pure Foods Private Limited (APFPL) to [ICRA]D (pronounced as ICRA D). The rating continues to remain suspended.* **The revision in rating follows delays in debt servicing by APFPL."**

> ICRA has downgraded its [ICRA]BBB (pronounced as ICRA triple B) rating with Stable outlook and [ICRA]A3+ (pronounced as ICRA A three plus) rating for Rs. 1,820.00 crore bank limits of Amira Pure Foods Private Limited (APFPL)† to [ICRA]D (pronounced as ICRA D). The rating continues to remain suspended. The revision in rating follows delays in debt servicing by APFPL

*Source: ICRA report, 8/2/2016*

According to the definitions on the ICRA website, debt instruments with a rating of "[ICRA]D" are "in default or are expected to be in default soon."

> [ICRA]D Instruments with this rating are in default or are expected to be in default soon.

*Source: ICRA*

According to Amira India's debt agreements, which are referenced as exhibits in ANFI's FY2016 20-F report, Amira India has an obligation to "repay on demand any moneys which ought to be paid by it, including principal, interest, and other moneys". The **"failure of the Borrower to repay shall entail in the Borrower being treated as a defaulter and the amount due as in default"**.

> 5. The Borrower agrees with each of the said Banks that unless otherwise agreed to by the said Banks or any one or more of them, the Borrower shall repay the said Facilities to each of the said Banks forthwith on demand of all such amounts as may be standing at the foot of the Packing credit and/or Cash Credit Account(s) or Other Accounts (hereinafter referred to as "the said Account(s)" together with interest, compound interest, additional interest, liquidated damages, costs, charges, expenses and other moneys thereon at the rate or rates as may be applicable thereto as set out in the Second Schedule to the said Consortium Agreement, <u>Failure of the Borrower to repay shall entail in the Borrower being treated as a defaulter and the amount due as in default</u> invoking the provisions as to defaults as hereinafter stated.
>
> Page 7 of 28

*Source: Amira Pure Foods Pvt. Ltd. lending consortium agreement*

The common definition of a debt service default (as opposed to a technical default due to a breach of a covenant) is a failure to pay principal and/or interest when due. This is consistent with Amira India's debt agreements, as evidenced above, which indicate that a failure to service the principal and/or interest on the debt represents a default.

There is corroboratory evidence from two independent credit rating agencies that confirm that Amira India has failed to service its debt when demanded by its creditors. The credit rating agencies have subsequently downgraded Amira India's debt to a 'D' rating, signifying default. While there is typically a cure period available to a borrower to resolve a default, there is no evidence from the credit rating agencies that Amira India has become current on its debt payments. **This cumulative body of evidence leads us to conclude that Amira appears to have defaulted on its bank debt.**

**Meanwhile, ANFI has failed to disclose this material information to U.S. investors.** In its recently filed 6-K, ANFI makes no mention of a failure to service its debt. In fact, ANFI's CFO stated in a recent press release that the Company remains committed to "a return to growth".

**What Is Going On At Amira?**

ANFI's recent disclosures are among the most remarkable we have seen.

Consider:

Revenue was down 9% y/y for 1H FY2017, but was down 25% on a two-year basis vs. 1H FY2015 levels. However, **despite the sharp decline in revenue, trade receivables have increased by 125%** over this time period (9/30/2016 vs. 9/30/2014). As a result, days sales outstanding (DSO) have increased from 56 days in 1H FY2015 to 169 days in 1H FY2017. DSO of 169 days is equivalent to 5.5 months.

| **AMIRA NATURE FOODS LTD. (ANFI)** | | | |
|---|---|---|---|
| ($ in millions) | 1H FY2015 | 1H FY2017 | % Change |
| Revenue | $ 280.2 | $ 210.9 | -25% |
| Trade receivables, net | $ 86.5 | $ 194.7 | 125% |
| DSO | 56 | 169 | |

Source: ANFI SEC filings

Meanwhile, ANFI separately disclosed that $191m of its $198m trade receivables outstanding are current and only $4m (or 2%) of receivables are more than six months past due. Unless the majority of the Company's revenues were recognized in the last month of the period (which would be highly unusual for any business), or ANFI has inexplicably extended their receivables terms by several months (despite having issues servicing its debt!), **it is a near mathematical impossibility that 96% of the Company's receivables could be considered current.**

|  | September 30, 2016 (Unaudited) | |
|---|---|---|
|  | Gross | Impairment |
|  | (Amount in $) | |
| Not past due | 190,904,182 | - |
| Past due less than three months | 2,784,364 | - |
| Past due more than three months but not more than six months | 409,564 | - |
| Past due more than six months but not more than one year | 1,656,313 | (1,386,400) |
| More than one year | 2,332,275 | (1,961,616) |
| Total | 198,086,698 | (3,348,016) |

Source: ANFI 6-K, dated 11/29/2016

**In 1H FY2017, ANFI spent $39k on capex.** With a net PP&E balance of $18.9m at 9/30/2016, at that rate of capex spend, it would take ANFI 245 years to replace its capital equipment! This is despite claiming since 2012 that a portion of the proceeds from its IPO would be used to build a new processing facility.

> On October 15, 2012, we completed an IPO of our ordinary shares pursuant to a Registration Statement on Form F-1, as amended (File No. 333-183612), which became effective on October 10, 2012. UBS Securities LLC and Deutsche Bank Securities Inc. acted as joint book-running managers, Jefferies & Company, Inc. acted as lead manager and KeyBanc Capital Markets Inc. acted as co-manager for the IPO. An aggregate of 9,000,000 ordinary shares were sold in the IPO at a price of $10.00 per share less underwriting discounts and commissions of $0.70 per share, for aggregate gross proceeds before expenses of $83,700,000. We paid for expenses in connection with the IPO (excluding underwriting discounts and commissions) totaling approximately $2.7 million. We used approximately $77 million of the net proceeds to purchase equity shares of Amira India contemporaneously with the completion of the IPO. Amira India has used $52 million of this amount to pay down a portion of the indebtedness under our secured revolving credit facilities, rather than the amounts under its term loans, because the secured revolving credit facilities bear interest at comparatively higher rates. Additionally, Amira India intends to use approximately $25 million of the IPO proceeds to partially fund the development of a new processing facility. Pending construction of the facility, such funds are being held in short term interest bearing fixed deposits with banks. At the completion of the IPO we retained $4 million of the net proceeds in ANFI to fund its future operating expenses through 2015.

Source: ANFI FY2016 20-F

Speaking of processing facility, in its recently filed 6-K, ANFI disclosed that it now has only six employees "working in operations and processing facility."

> As of September 30, 2016 and 2015, we had 269 and 438 full time employees, respectively. As of September 30, 2016, we had 58 employees working in our finance, accounting and legal department, 82 working in sales, marketing and distribution, 61 working in HR, IT and administration, and 6 working in operations and processing facility. We support our sales force using a marketing strategy including extensive media advertising in both Indian and international markets. We use television, radio and print advertisements to reach our end users in order to promote the Amira brand name.

*Source: ANFI 6-K, dated 11/29/2016*

Six employees?!!! **How does a company that supposedly generated $211m of revenue in 1H FY2017 only have six employees working in its processing facility?!** In fact, the employment trend at ANFI over time is rather telling.

*Sources: ANFI SEC filings*

**According to the Company's disclosures, in just six months, nearly the entire staff of ANFI's processing facility left the Company**, while sales, marketing, and distribution staff was also reduced by 45%. Not exactly a formula for "a return to growth".

Or, depicted another way:

### REVENUE PER PROCESSING FACILITY EMPLOYEE

| ($ in millions) | 1H FY2015 | 1H FY2016 | 1H FY2017 |
|---|---|---|---|
| Revenue | $ 280.2 | $ 231.7 | $ 210.9 |
| Ops and processing facility employees | 110 | 88 | 6 |
| Revenue per employee | $ 2.5 | $ 2.6 | $ 35.2 |

*Sources: ANFI SEC filings*

¯\\_(ツ)_/¯

Typically, when we look at a company that has a large net working capital balance, such as ANFI ($195m net trade receivables and $245m inventories vs. only $17m trade payables at 9/30/2016), working capital has a positive influence on cash flow when revenue shrinks. However, in the case of ANFI, as revenue in 1H FY2017 declined 25% vs. 1H FY2015 revenue, inventories are down only 3%, trade receivables are up 125%, and payables are higher over that time period. In the two years since 1H FY2015, "free cash flow" has been **negative $50m** despite shrinking revenue, de minimis capex spending, and continued reported profitability.

**AMIRA NATURE FOODS CASH FLOWS**

| ($ in millions) | 2H FY2015 | 1H FY2016 | 2H FY2016 | 1H FY2017 | Last 2 Yrs |
|---|---|---|---|---|---|
| Cash flow from operations | $ 9.9 | $ (1.5) | $ (5.7) | $ 8.2 | $ 10.8 |
| Interest paid | (17.6) | (13.3) | (17.5) | (14.1) | (62.6) |
| Interest income | 2.1 | 0.5 | 0.7 | 0.2 | 3.4 |
| Cash flow less net interest | $ (5.7) | $ (14.4) | $ (22.6) | $ (5.7) | $ (48.3) |
| Capex | (1.1) | (0.5) | (0.1) | (0.2) | (1.8) |
| Free cash flow | $ (6.7) | $ (14.8) | $ (22.7) | $ (5.9) | $ (50.2) |

*Sources: ANFI SEC filings*

There is not much logic to the movements of these various financial statement items nor is there much logic in the trend in revenue relative to the employee base.

Which begs the question…

**Are The Financial Statements Valid?**

For the TTM period ending September 30, 2016, ANFI reported $542.6m revenues, $71.6m of Adjusted EBITDA, and $1.13 of Adjusted EPS. **It is therefore deeply concerning that, as credit rating agencies suggest, ANFI can't service its debt when, according to its financial statements filed with the SEC, the Company reports significant profits and capex spending is de minimis.**

Amira Pure Foods Pvt. Ltd., the Indian operating subsidiary, files financial statements annually with regulatory authorities in India. This information can be found on finance websites in India, which is consistent with financial information disclosed in ratings reports from CARE and ICRA (see links for FY2015, FY2014, FY2013, and FY2012).

Below, we have outlined the revenue and profit after tax ("PAT") of Amira Pure Foods Pvt. Ltd. from FY2013 to FY2015, as reported in India. Unusually, as noted by the rating agencies, Amira India has not filed FY2016 financial statements in India.

*(Note that Indian financials are reported in "crore", which is a unit of measurement equal to 10 million. Indian financials are denominated in rupees, abbreviated as "Rs.". The financials below include some minor rounding errors, depending on source. Conversion of INR to USD is based on average weekly USD/INR exchange rates for each fiscal year, with FX data sourced from Bloomberg.)*

**AMIRA PURE FOODS PVT. LTD**
**(Indian filings, translated to USD)**

|  | FY2013 | FY2014 | FY2015 |
|---|---|---|---|
| *(Rs. in crore)* | | | |
| Sales and Other Income | ₹ 1,831 | ₹ 2,440 | ₹ 2,708 |
| Profit After Tax (PAT) | 39 | 47 | 51 |
| PAT Margin % | 2.2% | 1.9% | 1.9% |
| | | | |
| USD/INR | 54.36 | 60.36 | 60.21 |
| | | | |
| *($ in millions)* | | | |
| Sales and Other Income | $ 337 | $ 404 | $ 450 |
| Profit After Tax (PAT) | 7 | 8 | 8 |
| PAT Margin % | 2.2% | 1.9% | 1.9% |

*Sources: Bloomberg, CARE, ICRA, Indian finance websites*

In its annual 20-F filings with the SEC, ANFI reports financial information for Amira Pure Foods Pvt. Ltd. and its largest wholly-owned subsidiary (discussed later), but notes that amounts are "before intra group eliminations". Below, we compare financial results in USD for Amira Pure Foods Pvt. Ltd. from Indian sources vs. those filed with the SEC.

**AMIRA PURE FOODS PVT. LTD**
**(Indian filings vs. U.S. filings, in USD)**

|  | FY2013 | FY2014 | FY2015 |
|---|---|---|---|
| *Indian Financials* | | | |
| Sales and Other Income | $ 337 | $ 404 | $ 450 |
| Profit After Tax (PAT) | 7 | 8 | 8 |
| PAT Margin % | 2.2% | 1.9% | 1.9% |
| | | | |
| *U.S. Financials* | | | |
| Sales and Other Income | $ 337 | $ 406 | $ 429 |
| Profit After Tax (PAT) | 15 | 18 | 18 |
| PAT Margin % | 4.4% | 4.3% | 4.2% |

*Sources: Bloomberg, CARE, ICRA, Indian finance websites, ANFI SEC filings*

Immediately, we can see that profitability for Amira Pure Foods Pvt. Ltd. is substantially higher in the U.S. financials filed with the SEC compared to the Indian financials filed with regulatory authorities in India. **There's no clear explanation as to why this discrepancy would exist.**

Even more curious, profit after tax for the Amira Pure Foods Pvt. Ltd. standalone subsidiary was relatively flat during a time period when ANFI's SEC-reported PAT increased from $19.2m in FY2013 to $53.2m in FY2015, an increase of 177%.

According to ANFI's financial statements filed with the SEC, **the entirety of the growth in ANFI's profit after tax from FY2013 to FY2015 was driven by its subsidiary based in Dubai, Amira C Foods International DMCC.** There is little that is publicly available about this entity, other than references to a bizarre accusation of rice smuggling in the Philippines several years ago.

**AMIRA C FOODS INTERNATIONAL DMCC**

| | FY2013 | FY2014 | FY2015 |
|---|---|---|---|
| *U.S. Financials* | | | |
| Sales and Other Income | $ 100 | $ 178 | $ 354 |
| Profit After Tax (PAT) | 6 | 26 | 50 |
| PAT Margin % | 6.5% | 14.6% | 14.0% |

*Source: ANFI SEC filings*

In a report (archived copy here) issued in July 2016 by CARE Ratings, the rating agency described Amira C Foods International DMCC ("Amira Dubai") as "engaged in trade of rice (basmati and non-basmati varieties) along with other food products" and that "the company **purchases from Amira India** as well as other suppliers".

> Amira Dubai is engaged in trading of rice (basmati and non-basmati varieties) along with other food products. The company purchases from Amira India as well as other suppliers and markets the products under the Amira Brand as well the third party brands. The company also sells to large international institutions such as the Govt. agencies and global retail chains.

*Source: CARE Ratings report, 7/22/2016*

CARE also concluded that Amira C Foods International's ratings should be lowered "owing to deterioration in the financial profile its guarantor and parent company, Amira Pure Foods Pvt. Ltd." and it suspended Amira C Foods International's rating because "the company has not furnished the information required by CARE for monitoring of the ratings."

**Rating Rationale**

CARE has revised the ratings assigned to the bank facilities of Amira C Foods International DMCC (Amira Dubai) owing to deterioration in the financial profile its guarantor and parent company, Amira Pure Foods Pvt Ltd (Amira India, rating revised to 'CARE D', and suspended). CARE has also suspended, with immediate effect, the ratings as the company has not furnished the information required by CARE for monitoring of the ratings.

*Source: CARE Ratings report, 7/22/2016*

To summarize the above:

1) The profitability of ANFI's Indian subsidiary is much higher in its U.S. financial statements compared to the financial statements for the same subsidiary filed in India.

2) Profit growth of ANFI has been driven entirely by a little-discussed subsidiary based in Dubai that has intercompany dealings with ANFI's Indian subsidiary.

3) ANFI's Indian and Dubai operating subsidiaries are no longer providing financial information to credit rating agencies according to their reports, even though ANFI has recently filed unaudited financial information with the SEC in its 6-K dated 11/29/2016.

4) Despite supposedly being a profitable wholly-owned subsidiary of Amira Pure Foods Pvt. Ltd., the Dubai subsidiary has not helped Amira India avoid a default on its bank debt.

While ANFI received a clean bill of health from its auditors for the 2016 fiscal year (even though two previous auditors have resigned), recent developments cause us to believe that U.S. investors and regulators should question the validity of ANFI's financial statements filed with the SEC.

**Conclusion**

To conclude, we ask a simple question to our fellow investors: who is to be believed? Should we believe multiple independent credit rating agencies that are reporting that ANFI's operating subsidiary in India has defaulted on its debt? Or should we believe a company whose financial statements are filled with curiosities that don't quite add up? Unless ANFI's management can refute the reports of multiple independent credit rating agencies and also provide reasonable justifications for its disappearing workforce, unusual balance sheet movements, and other items detailed above, we are inclined to believe the reputable credit rating agencies. **As a result of ANFI's apparent undisclosed debt default, we have concluded that the Company is insolvent and that ANFI's equity is worth $0.**

**Disclosure:** I am/we are short ANFI.

I wrote this article myself, and it expresses my own opinions. I am not receiving compensation for it. I have no business relationship with any company whose stock is mentioned in this article.

**Additional disclosure:** The author currently has a short position in the securities of the subject company covered herein. The information and opinions expressed in this article are based on publicly available information. The article expresses the author's opinions and conclusions, based upon publicly available information, inferences and deductions.